## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

DUSHONTE MCCOY,                          )
                                         )
              Petitioner,                )
v.                                       )          **Civil Action No. 5:22-00162**
                                         )
KATINA HECKARD, Warden,                  )
                                         )
              Respondent.                )

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Document No. 1), filed on April 4, 2022. By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.) Having examined Petitioner's Petition, the undersigned finds and hereby respectfully recommends that it should be denied.

### FACT AND PROCEDURE

On April 4, 2022, Petitioner, acting *pro se*,[1] filed his Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241. (Document No. 1.) Petitioner indicates that he is improperly being denied earned time credit under the First Step Act ("FSA") for his "Evidence-Based Recidivism Reduction Training." (Id., p. 1.) Petitioner states that he has "completed several programing classes while [he] has been at FRCI Beckley." (Id.) As an Exhibit, Petitioner attaches a copy of his "Individualized Needs Plan – Program Review" dated January 16, 2022. (Id., pp. 2 – 3.) On April

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

8, 2022, Petitioner paid the $5.00 filing fee. (Document No. 4.)

By Order entered on April 11, 2022, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Petition and show cause, if any, why the Writ of Habeas Corpus sought by the Petitioner in this case should not be granted. (Document No. 5.) On April 14, 2022, Respondent filed his Response to the Order to Show Cause. (Document No. 8.) Respondent argues that Petitioner's Petition should be denied based upon the following: (1) "Petitioner has failed to exhaust administrative remedies" (Id., pp. 1 – 3); and (2) "Petitioner is not eligible for FTC release at this time" (Id., pp. 3 - 4). As Exhibits, Respondent attaches the following: (1) The Declaration of Destiny Spearen (Document No. 8-1, pp. 2 - 3); (2) A copy of Petitioner's "Administrative Remedy Generalized Retrieval" dated April 14, 2022 (Id., p. 5); (3) A copy of Petitioner's "Inmate Profile" dated April 14, 2022 (Id., pp. 7 – 8); and (4) A copy of Petitioner's "Inmate Education Data Transcript" dated April 14, 2022 (Id., p. 10).

By Order and Notice entered on April 15, 2022, the undersigned notified Petitioner of his right to file a Reply to Respondent's Response. (Document No. 9.) On May 9, 2022, Petitioner filed his Reply. (Document No. 10.)

## ANALYSIS

**1.    Failure to Exhaust:**

Generally, a federal inmate must exhaust available administrative remedies before filing a writ of habeas corpus in federal court. Boumediene v. Bush, 553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 490-91, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973)(requiring exhaustion in a Section 2241 action). Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section

2241. See Timms v. Johns, 627 F.3d 525, 530-33 (4th Cir. 2010); McClung v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004)(unpublished)(citing Carmona v. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001)); Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into Court. See Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The purpose of exhaustion, however, is frustrated "[w]hen an inmate attempts to exhaust an issue before the issue is ripe for review [because] the BOP is deprived of its opportunity to properly address the issue before being haled into court." Specter v. Director, 2010 WL 883733, * 4 (D.S.C. Mar. 5, 2010)(slip copy)(finding that petitioner failed to properly exhaust his claim for RRC placement because "no recommendation or decision had been made in his case yet and would not occur until 17 to 19 months prior to his anticipated release date").

Unlike the exhaustion requirement for Section 1983 and Bivens actions, the exhaustion requirements for Section 2241 Petitions are judicially imposed. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3rd Cir. 1996); McCallister v. Haynes, 2004 WL 3189469 (N.D.W.Va. 2004). Since the exhaustion requirement for a Section 2241 Petition is judicially imposed, the Court has discretion to waive that requirement in certain circumstances. See LaRue v. Adams, 2006 WL 1674487, * 8 (S.D.W.Va. June 12, 2006)(citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.), cert. denied, 521 U.S. 1131, 118 S.Ct. 2, 138 L.Ed.2d 1036 (1997)); also see Reeder v. Phillips, 2018 WL 2434003, * 3 (N.D.W.Va. June 12, 2008)(Since the statute authorizing habeas matters does not expressly require administrative exhaustion, the court retains discretion to disregard the exhaustion requirement in "pressing circumstances."). Courts, therefore, have

3

recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. It is clear, however, that "[e]xhaustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals." Wright v. Warden, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy); also see Reeder, 2008 WL 2434003, at * 3("Unless the agency is *certain* to rule adversely, however, a petitioner's unsupported prediction of failure does not excuse his lack of administrative exhaustion.")(emphasis added).

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the

Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his Response, Respondent argues that Petitioner's Section 2241 Petition should be dismissed because Petitioner did not exhaust his administrative remedies. (Document No. 8, pp. 1 – 3.) Respondent argues that "[a] review of Petitioner's administrative remedy history reveals he has filed no administrative remedies while incarcerated with the BOP." (Id., p. 3. In support, Respondent submits the Declaration of Destiny Spearen, a Paralegal at the Consolidated Legal Center at FCI Beckley. (Document No. 8-1, pp. 2 - 3.) Ms. Spearen declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id., p. 2.) Ms. Spearen states that Petitioner has filed no administrative remedies while incarcerated with the BOP. (Id.) As an Exhibit, Ms. Spearen attaches a copy of Petitioner's "Administrative Remedy Generalized Retrieval" dated April 14, 2022 (Id., p. 5.)

In Reply, Petitioner does not dispute that he failed to exhaust his administrative remedies. (Document No. 10, p. 1.) Instead, Petitioner argues that the exhaustion requirement should be excused because his claim involves statutory construction. (Id.) In support of his statutory

construction argument, Petitioner cites <u>Coleman v. U.S. Parole Comm.</u>, 664 Fed.Appx. 159 (3rd Cir. 2016). (<u>Id.</u>)

Based upon a review of the record, the undersigned finds that Petitioner failed to fully exhaust his available administrative remedies. As stated above, it is undisputed that Petitioner failed to exhaust his administrative remedies concerning the claims contained in his Petition prior to Petitioner filing the above action. Petitioner does not dispute that he completely failed to pursue his administrative remedies. <u>Timms v. Johns</u>, 627 F.3d at 530-33(Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section 2241.) Petitioner, however, contends that he should be excused from exhausting his remedies because his claims are based upon statutory construction. Petitioner relies upon <u>Coleman</u>, a decision from the Third Circuit holding that "exhaustion is not required with regard to claims which turn only on statutory construction." <u>Coleman</u>, 664 Fed.Appx. at 162. <u>Coleman</u>, however, is non-binding authority on this Court, which lies in the Fourth Circuit. Based on the foregoing, the undersigned respectfully recommends that the District Court dismiss the above action because Petitioner failed to properly exhaust the available administrative remedies *prior* to filing his Petition. Notwithstanding the foregoing, the undersigned will briefly consider the merits of Petitioner's claim.

**2.    Application of Time Credits Under the FSA:**

On December 21, 2018, the FSA of 2018 was signed into law and initiated a system that allows eligible prisoners to earn time credits for successfully completing "evidence-based recidivism reduction programming or productive activities. 18 U.S.C. § 3632(d)(4)(A). Specifically, prisoners that successfully complete evidence-based recidivism reduction programming or productive activities "shall earn 10 days of time credits for every 30 days of

successful participation. 18 U.S.C. § 3632(d)(4)(A). Additionally, a prisoner determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii). A prisoner, however, may not earn FSA time credits "for an evidence-based recidivism reduction program that the prisoner successfully completed prior to the date of enactment of this subchapter," December 21, 2018. 18 U.S.C. § 3632(d)(4)(B).

The FSA created a "new risk and needs assessment system to provide appropriate programing for prisoners." Musgrove v. Ortiz, 2019 WL 2240563, * 2 (D.N.J. May 24, 2019). Thus, FSA added subsection (h) to 18 U.S.C. § 3621. Pursuant to Section 3621(h), the BOP was required to create the risk and needs assessment system by January 15, 2020, begin implementing it on that date, and have full implementation complete on January 15, 2022. See Goodman v. Ortiz, 2020 WL 5015613 (D.N.J. Aug. 25, 2020). On July 19, 2019, the Attorney General published this system, entitled "Prisoner Assessment Tool Targeting Estimated Risk and Needs" ("PATTERN"). The BOP uses PATTERN to evaluate "the recidivism risk of each prisoner as part of the intake process, and classifies each prisoner as having minimum, low, medium, or high risk for recidivism." United States v. Tinsley, 2021 WL 5084691, * 16 (D.Md. Nov. 2, 2021); also see 18 U.S.C. §§ 3632(a)(1), (4)). The BOP further utilizes PATTERN to "reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." Id. Two scores are calculated by utilizing PATTERN: (1) A person's risk of reoffending in general; and (2) A person's risk of reoffending with a crime of violence. For males, PATTERN includes the following "risk items": (1) An inmate's current age; (2) Whether he has a Walsh conviction; (3) Whether he

committed a violent offense; (4) His criminal history points; (5) His history of escapes; (6) His history of violence; (7) His education score, such as whether he is enrolled in a GED program or has the equivalent of a high school diploma; (8) Completion of drug treatment programs; (9) All incident reports in the past 120 months; (10) Whether these incident reports were serious; (11) The amount of time since the last incident report; (12) Whether he agreed to participate in the financial responsibility program;[2] (13) The number of eligible programs completed; and (14) The number of work programs completed. Depending on the scoring in each category, the inmate is given fourteen general and violent scores that are totaled to assess whether the inmate is a minimum, low, medium, or high risk of reoffending in general and with a crime of violence. At a minimum, the BOP must reassess an inmate's PATTERN score annually if the inmate successfully participates in evidence-based recidivism reduction programming or productive actives. 18 U.S.C. § 3632(d)(5).

Under the FSA, eligible inmates may *earn* time credits irrespective of his or her recidivism risk. See 18 U.S.C. § 3624(g) and 28 C.F.R. § 523.42. Only inmates with low and minimum risk scores, however, may have these earned credits applied to his or her rerelease custody or early transfer to supervised released. Id.; also see 18 U.S.C. § 3624(g); 28 C.F.R. § 523.44(c)(1) and (d)(1). Title 18 U.S.C. § 3624(g) provides, in pertinent part, as follows:

> (1) Eligible prisoners.—This subsection applies in the case of a prisoner (as such term is defined in section 3635) who—
> > (A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;
>
> > (B) has shown through the periodic risk reassessments a demonstrated

---

[2] The PATTERN form on the BOP's website appears to contain a misnumbering. Although there appears to be fifteen "risk factors," the from omits number 12 from its numbering. *See* https://www.bop.gov/inmates/fsa/docs/male_pattern_form.pdf?v=1.3

recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

(C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

(D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner—

> (I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

> (II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison ....

(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C. § 3624. Concerning prerelease custody, 28 C.F.R. § 523.44(c) provides as follows:

(c) Prerelease custody. The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b) of this section:

> (1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or

> (2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that: (i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release; (ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and (iii) The prisoner is unlikely to recidivate.

28 C.F.R. § 523.44(c). Regarding early transfer to supervised release, 28 C.F.R. § 523.44(d) states

as follows:

(d) Transfer to supervised release. The Bureau may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:
(1) An eligible inmate has maintained a minimum or low recidivism risk

9

through his or her last risk and needs assessment;

(2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and

(3) The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred.

28 C.F.R. § 523.44(d). Accordingly, a prisoner wishing to have earned time credit applied toward placement in prerelease custody must either (1) be determined to be at minimum or low risk for the last two reassessments, or (2) the warden has approved the prisoner's petition determining that, among other things, the prisoner is unlikely to recidivate. See 18 U.S.C. § 3624(g) and 28 C.F.R. § 523.44(c). A prisoner wishing to have earned time credit applied toward his or her early placement in supervised release must be at minimum or low risk as of the last reassessment by the prison. See 18 U.S.C. § 3624(g) and 28 C.F.R. § 523.44(d).

In the instant case, it is undisputed that Petitioner has a high risk of recidivism score. (Document No. 8, p. 3, Document No. 8-1, pp. 2 and 8, and Document No. 10.) Although Petitioner may clearly *earn* time credits with a high risk of recidivism score, he may not have these credits *applied* to his prerelease custody or early transfer to supervised release. See King v. Joseph, 2023 WL 6626630, * 6 (D.S.C. Sept. 14, 2023)("[T]he First Step Act expressly states that an inmate with a medium or high risk of recidivism according to his PATTERN score may not have successfully completed recidivism reduction programs and productive activities applied towards his time credits until he receives a minimum or low risk PATTERN score for two consecutive assessments."); Compton v. Brown, 2023 WL 5767323 (N.D.W.Va. Aug. 18, 2023)("Petitioner is not entitled to have credits *applied* while he is at 'medium' risk of recidivating."); Frazier v. Strong, 2023 WL 5155939, * 4 (D.S.C. June 27, 2023)("While [Petitioner] is free to earn time

10

credits as an inmate with a medium risk recidivism level, under 18 U.S.C. § 3624(g)(1)(D)(i) –
(ii), the BOP cannot apply those time credits to [his] sentence unless and unless [he] has a
minimum or low risk recidivism level for two consecutive assessments for prerelease custody or a
minimum or low risk recidivism level for the last assessment for supervised release.")(citation
omitted). Additionally, there is no indication that Petitioner has successfully petitioned the Warden
for approval of transfer to prerelease custody or supervised release. See Welch v. Heckard, 2023
WL 6885005, at * 4("Because Welch is at a high recidivism risk level and has not had a petition
to apply time credits approved by the Warden, he is not eligible for the application of his FSA time
credits."). To grant Petitioner such approval, the Warden would have to determinate the following:
(1) Petitioner would not be a danger to society if transferred to prerelease custody or supervised
release; (2) Petitioner made a good faith effort to lower his recidivism risk through participation
in programs or productive activities; and (3) Petitioner is unlikely to recidivate. Again, there is no
indication that Petitioner has been granted such approval by the Warden. Accordingly, the
undersigned finds that Petitioner is not entitled to *habeas* relief.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court
confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED**
that the District Court **DENY** Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C.
§ 2241 (Document No. 1), and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is
hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank
W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and
Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days

(filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: January 7, 2025.



Omar J. Aboulhosn
United States Magistrate Judge